Citation Nr: 1719071 
Decision Date: 05/31/17 Archive Date: 06/06/17

DOCKET NO. 13-35 196 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to a rating in excess of 50 percent for schizoaffective disorder, bipolar type.

2. Entitlement to a total disability rating based upon individual unemployability due to service-connected disability (TDIU).


REPRESENTATION

Veteran represented by: Stacey Penn Clark, Attorney-at-Law


ATTORNEY FOR THE BOARD

G. E. Wilkerson, Counsel




INTRODUCTION

The Veteran served on active duty from May 2000 to August 2007.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a January 2012 decision the Department of Veterans Affairs (VA) Regional Office in St. Petersburg, Florida.

On his VA Form 9, Appeal to the Board, received in December 2013, the Veteran limited his appeal to the issues listed on the title page.

While the Veteran also initially requested a Board hearing on this matter on his VA Form 9, he subsequently withdrew his request in an October 2015 correspondence. The Board will accordingly proceed with a decision in this matter.


FINDINGS OF FACT

1. The Veteran's service-connected schizoaffective disorder, bipolar type, has been productive of occupational and social impairment with deficiencies in work, family relationships, thinking and mood.

2. The Veteran meets the schedular requirement for TDIU, and the effects of his service-connected schizoaffective disorder have rendered him unemployable.


CONCLUSIONS OF LAW

1. The criteria for a 70 percent rating for schizoaffective disorder, bipolar type have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.7, 4.130, Diagnostic Code 9211 (2016).

2. The criteria for an award of TDIU have been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.16(a) (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Increased Rating for Schizoaffective Disorder

The Veteran contends that he is entitled to an increased rating for his service-connected schizoaffective disorder, paranoid type.

Disability evaluations are determined by application of the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2016). An evaluation of the level of disability present must also include consideration of the functional impairment of the Veteran's ability to engage in ordinary activities, including employment. 38 C.F.R. § 4.10. When a question arises as to which of two ratings apply under a particular diagnostic code, the higher evaluation is assigned if the disability more closely approximates the criteria for the higher rating. 38 C.F.R. § 4.7. After careful consideration of the evidence, any reasonable doubt remaining is resolved in favor of the Veteran. 38 C.F.R. § 4.3.

The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995).

The Court has held that "staged" ratings are appropriate for any rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App 119 (1999). 

The Veteran's schizoaffective disorder, paranoid type is rated 50 percent disabling pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9211. This Diagnostic Code provides that schizoaffective disorder should be rated under the General Rating Formula for evaluating psychiatric disabilities other than eating disorders. 

Under the general formula, a 50 percent rating is assigned for occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships.

A 70 percent rating is assigned for occupational and social impairment with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near- continuous panic or depression affecting ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work-like setting); and inability to establish and maintain effective relationships. 

A 100 percent rating is assigned for total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closes relatives, own occupation, or own name.

The symptoms listed in the rating schedule are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. See Mauerhan v. Principi, 16 Vet. App. 436 (2002).

In Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed.Cir. 2013) the Federal Circuit stated that "a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration." 

Psychiatric examinations frequently include assignment of a Global Assessment of Functioning (GAF) score. According to the Fourth Edition of the American Psychiatric Associations Diagnostic and Statistical Manual of Mental Disorders (DSM-V), GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health illness." There is no question that the GAF score and interpretations of the score are important considerations in rating a psychiatric disability. See e.g., Richard v. Brown, 9 Vet. App. 266, 267 (1996); Carpenter v. Brown, 8 Vet. App. 240 (1995). However, the GAF score assigned in a case, like an examiner's assessment of the severity of a condition, is not dispositive of the evaluation issue; rather, the GAF score must be considered in light of the actual symptoms of the Veteran's disorder, which provide the primary basis for the rating assigned. See 38 C.F.R. § 4.126(a).

To the extent that the medical evidence reflects diagnoses of other psychiatric disorders, where it is not possible to distinguish the effects of nonservice-connected conditions from those of a service-connected condition, the reasonable doubt doctrine dictates that all symptoms be attributed to the Veteran's service-connected disability. See Mittleider v. West, 11 Vet. App. 181 (1998).

VA treatment records dated in 2009 and 2010 reflect that the Veteran reported symptoms of paranoia, anhedonia and social isolation. His symptoms were being managed with medication, and the Veteran had returned to school.

A May 2010 VA treatment report reflects that the Veteran had been doing well and handling stress at school. He was doing well on a combination of Abilify and lithium from a mood and psychosis standpoint. He denied any paranoia or psychotic features. He tolerated social contact in school without any deterioration. He denied manic or depressive symptoms. He denied suicidal thoughts. Diagnoses of schizoaffective disorder, alcohol abuse in early remission, and anxiety disorder were assigned. A GAF score of 65 was assigned.

On VA treatment in September 2010, the Veteran reported that he felt more anxious with difficulty sleeping. He also noted some difficulty concentrating. He was tolerating social contact at school. Diagnoses of schizoaffective disorder, alcohol abuse in early remission, and anxiety disorder were assigned. A GAF score of 60 was assigned.

A November 2010 VA examination report reflects that the Veteran endorsed mild/moderate daily anxiety for approximately 2 hours a day. He also experienced mild depression daily for approximately 4 hours. Elevated or expansive mood occurred once or twice a week for usually 20 to 30 minutes at a time. He also had mild irritability every day for about 30 minutes. He drank alcohol. He was not married and did not have children. His lived with his parents. He reported that he had 4 close friends.

On mental status examination, the Veteran presented as neatly groomed and appropriately and casually dressed. Psychomotor activity was unremarkable. Speech was unremarkable, spontaneous, clear, and coherent. Attitude was friendly and attentive, while affect was constricted. His mood was sad. Attention was described as intact, though the Veteran was unable to spell a word forward and backward and had one error in serial 7's. He was oriented though missed the correct date by one day. Thought process was unremarkable. Content was notable for paranoid ideation. He had delusions of reference involving the television, radio, and internet sending him messages. He has had bizarre delusions, including thought broadcasting and that something was planted in his arm to watch him. With respect to judgment, it was noted that he understood the outcome of behavior, and he had insight into his problem. While he had difficulty sleeping in the past, he was sleeping 7 hours with medication. He did not have hallucinations or inappropriate behavior. He was unable to interpret proverbs. He did not have obsessive or ritualistic behavior.

With respect to panic attacks, the Veteran reported feeling panicky on occasion in groups of people, stating that he thought people looked at him and judged him. He also reported feeling in a panic on occasion when he drove, recounting that he had been involved in 3 car accidents. There was no presence of homicidal or suicidal thoughts. Impulse control was described as fair, and there were no episodes of violence. He was able to maintain minimal personal hygiene and there was no problem with activities of daily living. Memory was noted to be normal.

It was noted that the Veteran had been employed as a corrections officer but had not worked since March 2008, when he was "let go" because he got into an argument with another officer. He had looked for subsequent work without success. He was attending community college and was struggling in school.

The examiner diagnosed schizoaffective disorder and alcohol abuse in partial remission. The examiner noted that the Veteran's paranoia was associated with his schizoaffective disorder, but his irritability could be due to either disorder. A GAF score of 60 was assigned. He found that the disability was productive of occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to mental disorder signs and symptoms, but with generally satisfactory functioning. 

On VA treatment in November 2010, the Veteran reported that he had been having manic thoughts. He indicated that he was "on top of the world one minute and afraid to go out the next with paranoid thoughts." He expressed his belief that his increased class load had driven this. He stated that he felt more worried about going out due to the paranoia. A mental status examination revealed that he had appropriate grooming with good eye contact and spontaneous speech. His mood was "alright" and his affect was reactive and appropriate. His thought process was linear without derailment. He denied suicidal thinking as well as homicidal ideation. He reported increased paranoia. He was alert and fully oriented. Concentration and insight were fair. Judgment was adequate. Diagnoses of schizoaffective disorder, bipolar type, exacerbation, alcohol abuse in remission, and anxiety disorder not otherwise specified, as well as a GAF score of 50, were assigned.

On VA treatment in May 2011, the Veteran described more persistent, increased paranoia over the past few months. He looked outside the window often due to concern that someone was going to rob the house or hurt him. He had not been leaving the house as much either. He was purposefully sleeping more because he did not want to be up. He had not done well during his past semester in college, which he attributed to missing class due to increased paranoia.

The Veteran described several episodes a week where he acutely felt more fearful and paranoid, got sweaty palms, and experienced an increase in heart rate. He denied any severe mood symptoms including depressive and manic symptoms. He denied having suicidal or violent ideations. Diagnoses of schizoaffective disorder, alcohol abuse in remission, and anxiety disorder, as well as a GAF score of 45, were assigned.

A June 2011 VA psychiatry note reflects that the Veteran has experienced some reduction in paranoia since changing medication. He reported that he had not had as many episodes where he was scared to go out of his room. This was occurring 3 to 4 times per week but was less frequent. He was hopeful he would be able to return to college for the fall semester. Diagnoses of schizoaffective disorder, alcohol abuse in remission, and anxiety disorder, as well as a GAF score of 45, were assigned

On VA treatment in July 2011, the Veteran endorsed paranoia, daytime somnolence, and isolation. He denied depressive or manic symptoms, hopelessness, and suicidal ideation. Diagnoses of schizoaffective disorder, alcohol abuse in remission, and anxiety disorder, as well as a GAF score of 50, were assigned.

A July 2011 psychiatric evaluation conducted pursuant to the Veteran's claim for Social Security disability benefits reflects that the Veteran reported that he resided with his parents. He described his interaction with others as "so-so" because he was not a "people person." He said he had been a loner since he became mentally ill. He had some friends and his family visit him. He went to church once every 2 months. He was able to perform activities of daily living independently, though his parents took care of household duties.

On mental status examination, the Veteran presented as adequately groomed. There were no deficits noted in his fine or gross motor skills. There were no visual or auditory problems noted. His speech was clear, eye contact was good, and affect was flat. The Veteran was oriented in all spheres. He was able to spell "world" forward but not backward. He was able to recall one out of three words in a five-minute time frame. Testing revealed average judgment and common sense reasoning skills and average abstract thinking.

The Veteran described his usual mood as depressed. He was not doing music like he used to and was not "like he used to be." He said his sleep was sometimes okay, and his energy level was tired. He reported that he did not like who he was and had no motivation. He sometimes heard things on television or the radio that was not the television or radio. He endorsed persecutory ideations. He indicated that he was paranoid, especially when he was in a car. He felt that the government was watching him. He did not have a problem with suicidal ideation. The Veteran stated that his mood was up and down. 

The examiner diagnosed schizoaffective disorder, bipolar type, and personality disorder. A GAF score of 50 was assigned.

A September 2011 VA psychiatry note reflects the Veteran's report that he was doing better until 3 weeks prior, when his paranoia started worsening. He also ran out of Hydroxyzine. He indicated that he was doing better after switching from Geodon to Risperidone for some time, but had slid backward clinically. He stated that he tolerated the transition and felt less paranoid, which allowed him to socialize more and go to the gym. He was not sure exactly why he reversed course. He also reported that he was pulled over by the police around the same time for speeding. He was much more paranoid after this event. He was back to isolating more and felt more dysphoric. He denied manic symptoms, suicidal ideation, or violent ideation. The Veteran felt that he could not return to school, but hoped that he was well enough to attend in the spring.

On mental status examination, the Veteran presented with appropriate grooming. He made good eye contact and spoke spontaneously with a normal rate and volume. His mood was a little depressed, and his affect was restricted and appropriate. His thought process was linear without derailment. He denied suicidal thinking as well as homicidal ideation. He reported ongoing and increased paranoia. He was alert and fully oriented. Concentration and insight were fair. He understood the problem and was able to verbalize possible solutions. His judgment was adequate.

Diagnoses of schizoaffective disorder, bipolar type, exacerbation, alcohol abuse in remission, and anxiety disorder not otherwise specific were assigned. The examiner noted a GAF score of 50.

On VA examination in December 2011, the Veteran reported that he lived with his parents. He stated that his relationship with his girlfriend ended 3 months before the examination. He had some friends from the military that lived in another state. While he had been in school, he dropped out due to being afraid of driving. He also noted that he recently missed an interview with UPS due to fear of driving to the interview. The Veteran had been prescribed hydroxyzine, lithium, and Risperidone.

Noted symptoms included depressed mood, anxiety, suspiciousness, and chronic sleep impairment. The Veteran also reported feeling "paranoid," described as being scared of driving. He was afraid of having another episode that would cause hospitalization. The Veteran also indicated that he was sad and sorrowful a few days of every month.

The examiner diagnosed schizoaffective disorder, anxiety disorder, and alcohol abuse. She determined that the disability was productive of occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress, or; symptoms controlled by medication. She indicated that the Veteran's anxiety was causing him to avoid the classroom and driving.

As for the impact of the disability on his employment, the examiner found that the Veteran's service-connected schizoaffective disorder did not cause significant functional impairment in sedentary or physical occupations. Although the Veteran reported that he was "paranoid" about driving, it appeared that he was anxious and recently was pulled over by law enforcement for speeding, which escalated his anxiety. His reported paranoia in public also appeared to be mainly anxiety. The examiner noted that people that are truly paranoid do not know it. 

The examiner determined that the Veteran's ability to understand and follow instructions, retain information, sustain concentration, and perform simple tasks were not impaired. His concentration and ability to response to coworkers, supervisors, or the public was mildly impaired. The examiner noted that the Veteran had accumulated over 50 hours of academic study toward a degree in business management. Completion of his degree could be accomplished with effort and perhaps with the assistance of online coursework due to anxiety or avoidance of driving.

On VA psychiatry treatment in February 2012, the Veteran endorsed worsening depression, anxiety and paranoia. He had been avoiding driving due to a concern that he might get in an accident. He obtained a new cellular telephone because he thought someone "put a chip" in his old one. The Veteran also described increasing impairment from depressive symptoms including lack of motivation, crying spells, and low energy. He felt down and had been gaining weight. He had not been to the gym because he did not want social interaction and was afraid of being scrutinized. His slept excessively (over 10 hours per day). He denied having suicidal or violent ideations or manic symptoms. 

On mental status examination, mood was depressed and his affect was restricted. He reported increased anxiety and ongoing mild paranoia. He was alert and fully oriented. Concentration was decreased and insight was fair. His judgment was adequate. A GAF score of 45 was assigned.
 
In April 2012, the Veteran reported that he was down, depressed, and at times had fear of driving and being around people. His mother was present and noted that the Veteran was not attending to hygiene as much as in the past. Depressive symptoms including isolation, poor motivation, fatigue, depressed mood, anhedonia, and crying spells were endorsed. The Veteran denied any concern for his safety including suicidal ideation.

On mental status examination, his mood was down and his affect was restricted. He reported dysphoria and some anxiety, as well as mild paranoia. He was alert and oriented. Concentration was decreased. His judgment was adequate. A GAF score of 45 was assigned.

The Veteran underwent VA inpatient psychiatry for 6 days in August 2012. He reportedly went voluntarily after developing suicidal ideation, racing thoughts, and increased isolation. The Veteran stated that he had been staying in his room with no motivation. He did not want to be around people. He also had thoughts of killing himself by taking sleeping pills. He endorsed increased depression due to dependence on others and an inability to be in school or have a job. He developed thoughts about taking a bunch of pills. He was having depressed mood, anhedonia, poor sleep, and some flight of ideas as well as anxiety and irritability. He reported some improvement in symptoms after admission. A GAF score of 45 was indicated.

On VA treatment in October 2012, the Veteran reported that he had increased paranoia two weeks prior and was hallucinating and hearing things. His mother indicated that the Veteran remained very isolated and was afraid to go outside. After mental status examination, a GAF score of 45 was assigned.

In February 2013, the Veteran reported that he had moved into an income-based apartment. He stated that he wanted to be more independent. However, he was not as socially active and spent most of his time in his apartment. He experienced paranoia/social anxiety. He has occasional audio hallucinations of hearing music that was not there. He denied hearing voices or any manic or severe depressive symptoms. He denied violent or suicidal ideation or hopelessness. Again, a GAF score of 45 was noted.'

In March 2013, the Veteran's mother called with concern that the Veteran was unable to support himself despite being in low rent housing. The psychiatrist indicated that based on the Veteran's condition now being chronically disabling, he felt that the Veteran should be higher than 50 percent.

On VA treatment in May 2013, the Veteran reported that he continued to be very socially isolated and did not leave the apartment due to fear, paranoia, and discomfort around others. In July 2013, he reported that he temporarily went back to live with his parents due to feeling lonely at the apartment. A GAF score of 48 was assigned at that time.

On treatment in September 2013, the Veteran reported that he had returned to the apartment, and even went to restaurants and a football game when a friend visited him. On mental status examination, he described his mood as "pretty good," and his affect was reactive and bright, but still reserved. A GAF score of 55 was assigned.

On VA treatment in June 2014, the Veteran reported that he was "not good" and had failed an attempt to go back to school. He stopped going to class in February because of paranoia. He had trouble focusing while in class. He no longer drove at all due to paranoia and fear of getting in another accident.

The examiner noted that the Veteran was struggling financially because he had not been able to work or continue with school. The Veteran was only 50 percent service-connected despite the chronicity and malignancy of his illness. He had tried to better himself, but his illness had interfered substantially with social and occupational functioning. He was very socially isolated. He had two people who visited him occasionally. He relied on his mother or neighbors for rides to get groceries. His primary symptoms had been impaired concentration and focus, racing thoughts, paranoia, depressed mood with some feelings of hopelessness, fatigue, and anxiety. 

On mental status examination, his mood was depressed and his affect was restricted and congruent. Concentration was decreased. Breakthrough depression and paranoia was indicated.

In January 2015, the Veteran reported that he moved back in with his parents in November. He was very isolated and had financial limitations. However, he also had a lot of paranoia including thinking someone might have been poisoning his water and sneaking into his apartment. 

A July 2015 psychiatric disability benefits questionnaire completed by Dr. G. of the Ocala VA clinic noted that he reviewed VA treatment records, including treatment provided by him since November 2008.

The examiner noted that the following symptoms applied to the Veteran's condition: depressed mood, anxiety, suspiciousness, panic attacks that occurred weekly or less often, near-continuous depression, chronic sleep impairment, mild memory loss, flattened affect, impaired judgment, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, inability to establish and maintain effective relationships, suicidal ideation, and occasional delusions or hallucinations. Other symptoms included racing thoughts, decreased need for sleep, fear of scrutiny by others with apprehension, and impaired concentration and motivation.

Dr. G. diagnosed schizoaffective disorder, bipolar type, depressed, and social anxiety disorder. He found the disability to be productive of total occupational and social impairment, noting that even if social anxiety were removed from the disability picture, the Veteran would still be totally impaired. He noted that the Veteran had repeatedly made efforts to try to normalize his life including moving into his own apartment and attending school. However, interference from schizoaffective disorder and to lesser degree his anxiety had led him to isolate, lending to self-neglect and having to move home with his parents. He also had to drop out of classes due to inability to concentrate, leading to failure to complete assignments as well as avoidance of class due to discomfort being around others.

On VA examination in September 2015, the Veteran stated that he had been in a relationship, but the relationship ended 8 months prior to examination. He denied having any close friends in whom he could confide. He had attended community college until March 2014, when he stopped going to class due to difficulties concentrating, feeling unsafe, and feeling that others were trying to "plot on [him]." He had not been employed since 2008.

The examiner noted that the Veteran was casually dressed with appropriate grooming and hygiene. There were no observable behavioral signs of a psychosis or mania. The Veteran endorsed anxiety and depression. The examiner indicated that he was unable to assess this due to test results indicating that the Veteran was feigning symptoms. 

The Veteran endorsed experiencing auditory, visual, and olfactory hallucinations; however, his descriptions included features that were not consistent with the research literature. He endorsed bizarre delusion of thought broadcasting. He was alert and fully oriented. There was no memory impairment.

The Veteran completed a forced-choice questionnaire, and his score revealed a likelihood of feigning. He endorsed a number of symptoms and impairment that were highly atypical of individuals who have genuine psychiatric or cognitive disorders. A test to assess psychotic symptoms was also suggestive of feigning symptoms.

The examiner indicated that he was unable to determine if the Veteran met the criteria for psychiatric diagnoses because the Veteran was not cooperative with examination. The examiner indicated that he was unable to differentiate possible legitimate symptoms from feigned symptoms. 

The aforementioned evidence reflects that the Veteran's schizoaffective disorder, bipolar type has been manifested by paranoia, difficulty sleeping, irritability and anger, anxiety, depression, panic attacks, mood swing, isolative behavior, lack of concentration, memory impairment and difficulty maintaining relationships. In the opinion of the Board, the frequency, severity and duration of these symptoms have been productive of occupational and social impairment with deficiencies in work, family relationships, judgment and mood. Such symptomatology is consistent with a higher 70 percent rating. 

In so finding, the Board acknowledges that VA records show periods of improvement of symptoms, and the 2015 VA examiner suggested that the Veteran was feigning symptoms. However, the overall disability picture documented in examinations and treatment records reflect that the Veteran has been unable to achieve sustained improvement in his psychiatric condition such that he is able to live on his own and attend school. Accordingly, the criteria for a 70 percent rating have been more nearly approximated.

However, at no point during the period of the appeal, is the service-connected schizoaffective disorder shown to have met the criteria for the higher rating of 100 percent. As noted, a 100 percent rating requires total occupational and social impairment due to symptoms such as gross impairment in thought processes or communication; persistent delusions; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent ability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of closes relatives, own occupation, or own name.

In 2015, Dr. G. opined that the Veteran's schizoaffective disorder was productive of total occupational and social impairment. However, while the mental status examinations in both formal examinations and in the clinic setting demonstrate some impairment of memory and concentration, they consistently demonstrated the Veteran to be oriented with no significant impairment of speech or communication. He has reported occasional images and sounds, but has otherwise denied chronic/persistent suicidal or homicidal ideations or auditory or visual hallucinations. His memory, while impaired, did not extend to the point of memory loss for names of closes relatives, own occupation, or own name on mental status examination. There is no lay or medical evidence that the Veteran presents as a persistent danger of hurting self or others. His hygiene is reported as maintained.

With respect to social functioning, the record reflects that the Veteran is socially withdrawn, but he lives with his parents and has reported that he had a girlfriend and occasional visits with friends. Thus, it cannot be said that he has "total" social impairment, and such is consistent with the findings on both VA examination and in treatment.

The Board further finds that none of the GAF scores assigned during this period, alone, provide a basis for assigning a rating in excess of 70 percent for PTSD. As indicated, the Veteran has been assigned GAF scores ranging from 45 to 65. These scores reflect some residual occupational and social functioning.

According to DSM-V, a GAF score ranging from 41 to 50 reflects severe symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job), while a GAF score ranging from 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). Thus, to the extent that the Veteran has been assigned scores in the moderate to severe range, such scores are consistent with the 70 percent rating assigned. These GAF scores reflect some residual occupational and social functioning and, thus, less than "total" occupational and social impairment.

In sum, the record does not support of a finding of both occupational and social impairment which is total in degree. In so finding, the Board has considered the Veteran's statements regarding the severity of his psychiatric symptoms and the medical opinion of "total" occupational impairment. As addressed below, the Board finds that the Veteran's schizoaffective disorder contributes to his employability but nonetheless the weight of the lay and medical evidence weighs against a finding of total occupational and social impairment. Certainly, as a lay person, the Veteran is competent to attest to the symptoms that he experiences. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). Generally, he has been credible with his testimony supporting a 70 percent rating as well as TDIU rating (as addressed below). However, as it pertains to the specific criteria for a 100 percent schedular rating under Diagnostic Code 9211, the totality of the lay and medical evidence-when considering the type, severity, and frequency of symptoms-weighs against a finding of "total" occupational and social impairment, or a level of disability more nearly approximating "total" occupational and social impairment. Regardless, with respect the overall severity of his schizoaffective disorder, the Board finds the medical impressions and opinions to be far more probative of the degree of impairment than the lay statements as it pertains to the extent of the overall psychological, occupational and social impairment due to his schizoaffective disorder. 

Neither the Veteran nor his/her representative has raised any other issues, nor have any other issues been reasonably raised by the record. See Doucette v. Shulkin, No. 15-2818, 2017 U.S. App. Vet. Claims LEXIS 319, *8-9 (Vet. App. March 17, 2017) (confirming that the Board is not required to address issues unless they are specifically raised by the claimant or reasonably raised by the evidence of record).

Accordingly, after affording the Veteran the benefit of the doubt, the Board finds that a uniform 70 percent rating for schizoaffective disorder, bipolar type, but no higher for any time during the appeal period, is warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert v. Derwinski, 1 Vet. App. 49, 55-56 (1990). 


II. TDIU

The Veteran also contends that he is precluded from working due to his service-connected schizoaffective disorder. 

Total disability ratings for compensation based on individual unemployability may be assigned where the schedular rating is less than total, when it is found that the disabled person is unable to secure or follow a substantially gainful occupation as a result of a single service-connected disability ratable at 60 percent or more, or as a result of two or more disabilities, provided at least one disability is ratable at 40 percent or more, and there is sufficient additional service-connected disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). Where these percentage requirements are not met, entitlement to the benefits on an extraschedular basis may be considered when the veteran is unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities. 38 C.F.R. § 4.16(b).

The central inquiry is, "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Consideration may be given to the Veteran's education, special training, and previous work experience, but not to his age or to the impairment cause by nonservice-connected disabilities. See 38 C.F.R. §§ 3.341, 4.16, 4.19; see also Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993).

In order for a veteran to prevail in his claim for TDIU, the record must reflect circumstances, apart from non-service-connected conditions, that place him or her in a different position than other veterans who meet the basic schedular criteria. The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is recognition that the impairment makes it difficult to obtain or keep employment. The ultimate question is whether the veteran, in light of his or her service-connected disorders, is capable of performing the physical and mental acts required by employment, not whether he or she can find employment. See Van Hoose, 4 Vet. App. at 361.

In Geib v. Shinseki, 733 F.3d 1350 (2013), the Federal Circuit held that VA's duty to assist did not require obtaining a single medical opinion regarding the combined impact of all service-connected disabilities. "Indeed, applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." Id. at 1354.

Here, the Veteran is service-connected for schizoaffective disorder (now rated as 70 percent disabling).

Hence, the Veteran meets the criteria for schedular TDIU rating per 38 C.F.R. § 4.16(a).

In his November 2011 application for TDIU, the Veteran reported that he last worked in 2008 as a prison guard. He reported that he had attended two years of college, and while he attempted to continue his education, he had to drop out of class because of paranoia and missing too many days of class due to fear of driving.

As indicated above, the Veteran has not worked during the course of his appeal, and while he has attempted to return to school on a few occasions, those attempts have been unsuccessful. Social Security Administration records reflect that while the Veteran was initially denied disability benefits, he was later determined to be disabled as of November 2013 due to an affective disorder.

The above-discussed medical evidence reflects that the Veteran has demonstrated symptoms of paranoia, social anxiety, irritability, mood swings, depression, anhedonia, social isolation, and impaired concentration. As noted in VA treatment records and on the 2015 disability benefits questionnaire, the Veteran has been unable to successfully return to school due to such symptoms. 

The foregoing establishes that it is at least as likely as not that the Veteran is unable to perform work-related tasks due to symptoms such as paranoia, panic, anxiety, depression, impairment in concentration, memory along with difficulties in social interaction with others due to his service-connected schizoaffective disorder. These impairments are incompatible with his previous work history of working as a corrections officer.

As a result of these work limitations caused by service-connected disabilities as reflected in the 70 percent disability rating, and in consideration of the various VA examinations of record regarding the severity of the Veteran's service connected schizoaffective disorder and its impact on his employability, the Board resolves reasonable doubt in favor of the Veteran by finding that his service-connected disability has rendered him unable to secure or follow substantially gainful employment.

Therefore in resolving all doubt in the Veteran's favor, the Board concludes TDIU is warranted. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. at 55-56.


ORDER

A 70 percent rating for schizoaffective disorder, bipolar type, is granted, subject to the controlling regulations applicable to the payment of monetary benefits.

Entitlement to a TDIU is granted, subject to the controlling regulations applicable to the payment of monetary benefits.



____________________________________________
A. S. CARACCIOLO
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs